610 F.2d 367
 6 Bankr.Ct.Dec. 327, Bankr. L. Rep. P 67,321
 In the Matter of Patrick C. DINKINS, Debtor.
PACIFIC EASTERN CORPORATION, Appellant,
v.
Patrick C. DINKINS, Appellee.
 No. 78-1151.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 25, 1980.
As Modified on Denial of Rehearing March 31, 1980.
 
 Ames Davis, Nashville, Tenn., for appellant.
 William G. Vance, David G. Bisbee, Atlanta, Ga., for appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal challenges the right of a bankruptcy judge, affirmed by the district court, to take over by summary proceedings funds held by an escrow agent pending resolution of disputed claims between the Chapter XI debtor in possession and the other claimant to the escrow funds.
 
 
 2
 Dinkins, the debtor in possession, entered into a construction contract in July 1971 with Pacific Eastern as owner to build a motor inn in Nashville, Tennessee. Following disputes between the parties, debtor, his surety, the intervenor and the construction lender entered into an agreement in August 1972 entitled "Modification of Construction Agreement." This agreement provided that the debtor would withdraw from the project and would be paid what it could be agreed was owed for work done in full satisfaction of all claims.
 
 
 3
 Paragraph 7 of the modification agreement entitled "Payments to Contractor" itemized the total debits and credits for the debtor's account and ended with an item called "balance due contractor" of $96,482.75. This paragraph of the agreement contemplated disbursement of part of the said amount to the contractor's creditors, and part directly to the contractor. Prior, however, to the execution of the modification agreement subsequent paragraphs numbered 17 and 20 were added. These paragraphs are as follows:
 
 
 4
 17. Payroll Expense of Contractor. Subsequent to the initial draft of paragraph 7 of this Agreement, a dispute arose regarding the actual amount of CONTRACTOR's direct payroll and payroll taxes. CONTRACTOR and OWNER do hereby agree that the sum of $7,000 payable to CONTRACTOR under this Agreement shall be escrowed with Alfred E. Abbey, attorney, as escrow agent. CONTRACTOR shall have five (5) days from the termination date to furnish OWNER total payrolls of P. C. Dinkins Company for employees in Nashville on the project, and any overpayment or underpayment will be adjusted from audited copies of such payrolls. OWNER shall within 7 days after delivery of payroll records complete its audit. The funds in escrow shall be disbursed by the escrow agent to CONTRACTOR and/or OWNER upon both parties' certification of an agreement as to the disbursement following such audit.
 
 
 5
 To such extent as is hereby indicated, this provision supercedes (sic) paragraph 7 above.
 
 
 6
 20. Correction of the deficiencies in the storm drain on the north side of the project (see Paragraph 13(c)(ii)) is in progress as of the execution of this Agreement. It is agreed that the sum of $4,000.00 shall be escrowed from the funds payable to CONTRACTOR and deposited with Alfred E. Abbey, attorney, as escrow agent. Upon certification by the architect, H.W. Bond, Jr. & Associates, that the corrective work has been completed and the storm drain installed properly, OWNER shall submit an itemized statement of direct expenses of owner to perform such corrective work and to restore the landscape to condition prior to such work. CONTRACTOR shall have five days from receipt of such statement to verify and transmit the same to the escrow agent. Escrow agent shall disburse such part or all of such funds to cover OWNER's expense and the residue, if any, shall be paid over to CONTRACTOR.
 
 
 7
 The parties are in disagreement as to whether the debtor supplied within five days or any other time after the execution of the agreement the proper payroll records as called for under Paragraph 17 and whether the amount claimed by the owner to correct the deficiencies in the storm drain mentioned in Paragraph 20 were actually borne by the owner.
 
 
 8
 While these matters were in limbo, Dinkins filed his Chapter XI reorganization proceedings and was permitted to continue as debtor in possession. Thereafter, the debtor commenced this adversary proceeding against Abbey, the escrow holder, to compel him to turn over the $11,000 placed in escrow under the agreements noted above. Abbey answered that he held the funds pursuant to an escrow agreement and stood ready to turn them over to whomever a court with jurisdiction found to be entitled to them. With the consent of the debtor, Pacific Eastern Corporation, the owner, was allowed to intervene and object to the court's jurisdiction.
 
 
 9
 The bankruptcy judge, apparently overlooking the language in Paragraph 17, "to such extent as is hereby indicated, this provision supersedes Paragraph 7 above" concluded that considering the title to Paragraph 7 (Payments to Contractor) and the language "balance due contractor of $96,482.75 (which included the $11,000 with which we are concerned), the purport of the modification agreement was to pass title to the debtor of the full sum of the $96,482.75 referred to in Paragraph 7. The court, thus concluded that the escrow funds were "the property of the bankrupt" and that under the terms of the Bankruptcy Act, the bankruptcy court has "exclusive jurisdiction of the debtor and his property, wherever located." 11 U.S.C.A. § 711.
 
 
 10
 Upon appeal to the district court the order of the bankruptcy judge was first reversed, but on reconsideration moved by the bankrupt was later affirmed. Thereafter, the bankruptcy court having held a trial to determine respective claims of the owner and the debtor of the escrowed amounts and having awarded substantially all of it to the debtor, the owner appealed to the district court. That court, after a careful consideration of the standard by which the courts have held that summary jurisdiction may be exercised in a Chapter XI proceeding found in favor of jurisdiction and affirmed the judgment of the bankruptcy judge.
 
 
 11
 Whenever the question of summary jurisdiction arises on a claim related to a bankruptcy proceeding, the initial inquiry is whether the property in question is in the actual or constructive possession of the debtor, and therefore of the Court. 323 U.S. 97, 98-99, 65 S.Ct. 155, 156, 89 L.Ed. 97, 99 (1944). In this case, it is clear the Escrow Agent, and not the Bankrupt nor the Court, has possession of the property in question.
 
 
 12
 However, the fact that the debtor is not in possession of the property does not necessarily mean that the Bankruptcy Court does not have summary jurisdiction. The next inquiry is whether the adverse claimant who is in possession nevertheless "has a legal right to maintain the actual, physical possession." American Mannex Corp. v. Huffstutler, 329 F.2d 449, 451 (5th Cir. 1964), quoted in Kyle v. Stewart, 360 F.2d 753, 756-57 (5th Cir. 1966). If this adverse claim is merely colorable or frivolous, then the Bankruptcy Court has summary jurisdiction. If, however, the adverse claim is more substantial, then that claimant has a right to have his claim heard in a plenary proceeding. Maule Industries v. Gerstel, 232 F.2d 294, 297-98 (5th Cir. 1956).
 
 
 13
 No case has been cited to us which holds that where actual title is owned by the debtor, the bankruptcy court does not have jurisdiction. But it would seem that if title clearly rested in the debtor, an adverse claim would be frivolous and summary judgment would be appropriate. The problem presented here is whether on the record before us the bankruptcy court could determine that the funds being held by Abbey as escrow agent under the terms provided by Paragraph 17 (an inclusive term to include Paragraph 20 as 2311) were the "property of the debtor."
 
 
 14
 As we view the provisions of Paragraphs 7 and 17 it is apparent that of the $96,482.75 which, under Paragraph 7, had been denominated "Payments to Contractor" and "balance due contractor" there was subtracted in the subsequent Paragraph 17 the sum of $11,000 as to which entitlement could not then be finally determined. Instead, Paragraph 17 provided that the person who would be entitled to this $11,000 could be determined after proof had been made, as to $7,000, by the debtor establishing the amounts actually paid by him for payroll and payroll taxes and as to the $4,000 by the owner of the cost of repair work performed at its expense. Thus, this amount of $11,000 was no longer included within the definition of "balance due contractor" or within the terms of the caption of Paragraph 7, "payments to contractor." Obviously, the parties were not at the time of the signing of the modification agreement agreed on how much was to be paid to the contractor, and, in fact, less than the total amount of $96,482.75 was paid to him in the end.
 
 
 15
 We need not consider whether, if the original Paragraph 7 of the contract had been fully carried out and the full amount of cash agreed to be paid to the contractor had actually been paid over to him, but thereafter by agreement he had reconsidered and paid $11,000 of the amount received by him into the escrow account a different result would be required here. The fact remains that the owner, not the contractor, placed the money in the escrow account in accordance with the modified contract, that is to say the contract called the "modification agreement" as finally executed on August 24, 1972, including the terms of Paragraph 17, which expressly provided that "to such extent as is hereby indicated, this provision supersedes Paragraph 7 above."
 
 
 16
 Once it is clear that title to the escrow account did not rest in the debtor, but in the owner, it is evident the owner has a substantially adverse claim against the property, and the determination of the relative rights of the parties to these monies should be made in a plenary, and not a summary, proceeding.
 
 
 17
 The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 ON PETITION FOR REHEARING
 PER CURIAM:
 
 18
 The petition for rehearing is overruled. However, in order to clarify somewhat our discussion of the type of situation in which summary jurisdiction exists we revise the former opinion which is substituted in lieu thereof.