In the Matter of KALEIDOSCOPE, INC.,

Frank W. SCROGGINS, Trustee in Chapter X of Kaleidoscope, Inc., Plaintiff/Appellee,

v.

POWELL, GOLDSTEIN, FRAZER & MURPHY, a Georgia General Partnership, Defendant/Appellant.

No. C81–2360A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 3, 1982.

Jack M. McLaughlin, Robert E. Hicks, Atlanta, Ga., for plaintiff/appellee.

Emmet J. Bondurant, II, Atlanta, Ga., for defendant/appellant.

### ORDER

RICHARD C. FREEMAN, District Judge.

Defendant, the law firm of Powell, Goldstein, Frazer & Murphy (Powell, Goldstein), appeals from a turnover order issued by Judge A.D. Kahn of the United States Bankruptcy Court for the Northern District of Georgia. Plaintiff, the Trustee in reorganization (Trustee) for the debtor, Kaleidoscope, Inc. (Kaleidoscope), has moved that this court reconsider its order of May 25, 1982, granting Powell, Goldstein's motion to supplement the record and granting in part and denying in part the Trustee's motion to supplement the record. Because this appeal requires consideration of proceedings in several courts, throughout the present order the phrase "this court" will refer to the United States District Court for the Northern District of Georgia. For the reasons that follow, this court will deny the Trustee's motion for reconsideration, will reverse the order of the bankruptcy court, and will remand this case to the bankruptcy court with instructions to stay proceedings on the Trustee's turnover complaint and to order the Trustee to present to the courts of the state of Georgia the issue of ownership of certain materials amassed in Powell, Goldstein's files as the result of its representation of Kaleidoscope.

### I. FACTS

Between December 1977 and February 1979, Powell, Goldstein, as counsel for several persons, including Kaleidoscope, participated in various negotiations, agreements, and transactions that resulted in the transfer of most of Kaleidoscope's assets to another corporation and in Kaleidoscope's eventual bankruptcy. In lawsuits in both state and federal court, the Trustee has consistently asserted that the actions of Powell, Goldstein and its clients were wrongful and that the transfer of Kaleidoscope's assets is therefore void. Although this appeal presents only one of the many legal questions spawned during Powell, Goldstein's representation of Kaleidoscope, the resolution of that one issue requires a detailed summary of facts.

In 1977, Susan Edmondson and Charles Edmondson, formerly wife and husband, each owned one-half of the stock of Kaleidoscope, which the two of them had founded in 1974. In December 1977, Susan Edmondson employed Powell, Goldstein to represent her in negotiations with Charles Edmondson that resulted in the signing of a "Stock Redemption Agreement." This agreement, which became effective on February 2, 1978, permitted Charles Edmondson to redeem his shares in exchange for $200,000 cash and a promissory note for $550,000, which was secured by a security interest in most of Kaleidoscope's assets. Once those shares were redeemed, Susan Edmondson became the president and sole shareholder of Kaleidoscope. Thereafter, Powell, Goldstein continued to represent both Susan Edmondson and Kaleidoscope throughout 1978.

In December 1978, Powell, Goldstein incorporated the MOA Corporation (MOA), thirty percent of whose capital stock was issued to Susan Edmondson. The remaining seventy percent of MOA's capital stock

was issued to Theodore Munchak, whom Powell, Goldstein had represented previously in other matters. In January 1979, Powell, Goldstein represented Kaleidoscope, Susan Edmondson, and Theodore Munchak during the time that Charles Edmondson "foreclosed" on his note and took possession of Kaleidoscope's assets, which he then sold to Theodore Munchak for $312,000. Mr. Munchak in turn transferred those assets to MOA. On January 17, 1979, Powell, Goldstein apparently ceased representing Kaleidoscope; however, the law firm continued for some time to represent Susan Edmondson, Theodore Munchak, and MOA.

On February 1, 1979, an involuntary bankruptcy petition was filed against Kaleidoscope by three of its creditors. The involuntary proceeding was converted into a voluntary Chapter XI proceeding on February 5, 1979, and the Trustee was appointed receiver. Later, on September 14, 1979, the Chapter XI proceeding was converted into a Chapter X reorganization, and the Trustee was appointed to his present position.

The Trustee has steadfastly maintained that the execution of the February 1978 stock redemption agreement violated Georgia Code Ann. § 22–513 [now Official Code of Georgia Ann. § 14–2–92], which prohibits a corporation from purchasing its own shares when the corporation is insolvent or when the purchase would, in effect, render the corporation insolvent. Therefore, the Trustee contends, the redemption of shares, Charles Edmondson's retention of a security interest in Kaleidoscope's assets, his subsequent foreclosure, Theodore Munchak's purchase of the foreclosed property, and the transfer of that property to MOA are all void. The Trustee has also asserted in state court that Powell, Goldstein's involvement in these transactions on behalf of its clients embroiled it in conflicts of interest that amount to legal malpractice and breach of its fiduciary and contractual duties to Kaleidoscope.

The Trustee first made his claims that the transfers of assets were void in a complaint filed in bankruptcy court on February 16, 1979, naming as defendants Susan Edmondson, Charles Edmondson, Theodore Munchak, MOA, and several others who had been involved in the transfers. On June 19, 1979, the bankruptcy court dismissed the Trustee's complaint, holding that resolution of the issues presented would require the court to determine whether Kaleidoscope was solvent when the stock redemption agreement was executed, that it was doubtful whether the bankruptcy court had jurisdiction to determine "solvency" within the meaning of the Georgia statute, and that it was therefore appropriate under the circumstances to dismiss the complaint without prejudice and to authorize the Trustee to bring a complaint against the same defendants in a state court, which would undoubtedly have jurisdiction to consider the merits of all the claims made in the complaint. The Trustee thereafter instituted an action (first state court suit), asserting the same claims and naming the same defendants, in the Superior Court of Fulton County, Georgia.

Powell, Goldstein represented Susan Edmondson, Theodore Munchak, and MOA Corporation in their defense to both the February 16, 1979, bankruptcy complaint and the first state court sut, but later withdrew as their counsel. Although the record does not disclose the reason for the law firm's withdrawal, it appears that Powell, Goldstein ceased representing those clients not long before October 31, 1980, the date that the superior court granted the Trustee's motion to add as defendants in the first state court suit Wayne Shortridge and Walter Moeling, the two Powell, Goldstein partners who were primarily responsible for rendering legal services to those clients and to Kaleidoscope in the transactions challenged by the Trustee in that suit.

The present action began on August 29, 1979, with the Trustee's filing of a bankruptcy complaint against Powell, Goldstein, seeking (1) a turnover order requiring the law firm to relinquish possession of a corporate minute book and any other property of Kaleidoscope held by Powell, Goldstein, (2) a determination of the validity and extent of Powell, Goldstein's asserted attorney's

lien, and (3) an examination of all payments of money and transfers of property by Kaleidoscope to the law firm, some of which, the Trustee alleges, were made in contemplation of bankruptcy. In response, Powell, Goldstein argued that because of the pendency of the closely related first state court suit, the bankruptcy court either should dismiss the complaint for lack of jurisdiction, or, if it had jurisdiction, should nevertheless in its discretion decline to rule upon the plaintiff's complaint. Powell, Goldstein also asserted that ruling on the Trustee's complaint would require the bankruptcy court to resolve unsettled questions of state law, in violation of the rule of bankruptcy court abstention established in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1942) (discussed *infra*).

In an order dated March 3, 1980, the bankruptcy court denied Powell, Goldstein's motion to dismiss, holding, first, that its exclusive jurisdiction to determine the reasonableness of pre-bankruptcy payments of attorney's fees was well-settled, citing section 60d of the Bankruptcy Act of 1898, 11 U.S.C. § 96, and Rule 220, Fed.R.Bankr.P., and, second, that the defendant had not identified sufficiently substantial state interests to justify abstention. *In re Kaleidoscope,* 3 B.R. 7, 9 n. 2 (Bkrtcy.N.D.Ga.1979). Powell, Goldstein subsequently filed an appeal of that order but later obtained a voluntary dismissal of the appeal in a consent order signed by this court on June 4, 1980.

On January 30, 1981, the Trustee filed a complaint against Powell, Goldstein in the superior court (second state court suit) seeking to recover all legal fees paid by Kaleidoscope to Powell, Goldstein, on the grounds that Powell, Goldstein had committed malpractice and had breached fiduciary and contractual duties owed to Kaleidoscope during the time it was represented by Powell, Goldstein.

In the course of discovery in the first state court suit, the Trustee sought to inspect and copy all of the legal files maintained by Powell, Goldstein in connection with its prior representation of Kaleidoscope, Susan Edmondson, Theodore Munchak and MOA. Powell, Goldstein voluntarily permitted the Trustee and the defendants in that suit access to most of the material in those files but refused to produce "internal documents which contained Powell, Goldstein lawyers' mental impressions, legal theories, or research notes which were not sent to clients or otherwise disclosed to individuals outside of the law firm," Brief of Appellant at 9, on the grounds that those documents, which the law firm termed "work product," were absolutely immune or privileged from discovery. On October 27, 1981, at a hearing on the Trustee's motion to compel and on Powell, Goldstein's motion for a protective order, the superior court agreed with Powell, Goldstein and issued an oral order that, among other things, provided for *in camera* inspection of the disputed material to determine which documents in Powell, Goldstein's files merited protection as work product. On December 1, 1981, in a written order evidencing and clarifying its previous oral order, the superior court held

> that a claim of "work product" belongs to the law firm, and not to the former client, and that the client is not, therefore, entitled to the production of "work product" of its former counsel created during the course of the former representation.

*Scroggins v. Edmondson,* No. C–52741, Order on Pending Motions at 5. (Superior Court of Fulton County December 1, 1981).

On September 22, 1981, before the state court had ruled on the discovery dispute in the first state court suit, the Trustee filed a motion for leave to amend his bankruptcy complaint against Powell, Goldstein. In the amendment, the Trustee sought a turnover order requiring Powell, Goldstein to relinquish permanent possession of various books and records of Kaleidoscope and all material in Powell, Goldstein's Kaleidoscope files. At a hearing in bankruptcy court on October 26, 1981, the day before the discovery hearing was held in the first state court suit, Powell, Goldstein agreed to turn

**734**

over to the Trustee any of Kaleidoscope's corporate books or records in the law firm's possession upon the entry of an order preserving Powell, Goldstein's lien for attorney's fees. At the same time, the bankruptcy court allowed Powell, Goldstein ten days in which to file a written brief addressing the merits of the question of ownership of the materials in its Kaleidoscope files.

In its brief, submitted after the superior court had orally ruled in Powell, Goldstein's favor on October 27, 1981, in the discovery dispute in the first state court suit, Powell, Goldstein asserted a plethora of defenses to the turnover complaint, arguing (1) that the turnover complaint was so broadly worded that compliance with the requested order would require Powell, Goldstein to relinquish possession of files generated on behalf of Susan Edmondson, Theodore Munchak, and MOA, who were not parties to the bankruptcy complaint against Powell, Goldstein and whose files the plaintiff could assert no colorable claim of a right to possess; (2) that many of the files of those former clients were so "intermixed and overlapping" that it would be "virtually impossible" to separate the Kaleidoscope files from the other clients' files; (3) that the bankruptcy court should refrain from ruling on the merits of the turnover request until it had held "an evidentiary hearing, in which all the parties are represented, to determine which files are which, if, indeed, such a determination is possible"; (4) that the disputed material in the Kaleidoscope files was the property of Powell, Goldstein and that the state court had so held in its oral order of October 27, 1981; (5) that the disputed material was protected from a turnover order by the work product doctrine; (6) that the bankruptcy court, in its order of June 19, 1979, had "ceded" jurisdiction of the dispute to the Georgia state courts and should not interfere by granting the motion and turnover order, with the state court's control over the first state court suit; and (7) that the ruling by the state court in the discovery dispute rendered the question of possession of the disputed material *res judicata*. Powell, Gold-

stein's Response to the Plaintiff's Motion for a Turnover Order, filed on November 5, 1981, at 3–8.

On November 13, 1981, the bankruptcy court granted the Trustee's motion to amend his complaint and ordered Powell, Goldstein to turn over all of the legal files of Kaleidoscope, which, it held, included

all papers, documents, and other tangible things which came into the possession of or were created by Powell, Goldstein during the course of its representation of Kaleidoscope, and ... all internal memoranda, correspondence, notes, records, and the like prepared by or otherwise generated by the attorneys and employees of Powell, Goldstein in the course of their representation of Kaleidoscope.

Bankruptcy Court Order of November 13, 1981, at ¶ 1. The bankruptcy court held further that Kaleidoscope owned not only those files, but also

all legal files in the possession of [Powell, Goldstein] created or amassed during the joint representation of Kaleidoscope, Inc. and any other person, including Susan L. Edmondson, Theodore J. Munchak, [and] MOA Corporation ... with regard to matters within the scope of the subject matter of the joint representation.

*Id.* at ¶ 2, and ordered that Powell, Goldstein turn over those files as well. The bankruptcy court specifically rejected "any 'work product' or other exception" to Kaleidoscope's ownership of those files. In the same order the bankruptcy court recognized and preserved Powell, Goldstein's asserted attorney's lien, treating it as an administrative claim subject to later approval or denial by that court. The bankruptcy court's order also established a schedule for copying of the disputed documents by Powell, Goldstein at its expense and for turnover of the originals to the Trustee. The bankruptcy court's order was accompanied by a lengthy Memorandum of Opinion, which was subsequently published at 15 B.R. 232 (Bkrtcy.N.D.Ga.1981).

On November 24, 1981, the bankruptcy court granted partial supersedeas of the

above order of November 13, 1981, allowing Powell, Goldstein to submit the originals of the disputed materials to the state court for *in camera* inspection, in accord with the state court's oral order of October 26, 1981, and to file "a full, complete, accurate, and legible set of those documents" with the bankruptcy court pending the outcome of this appeal.

## II.  ISSUES ON APPEAL

In the brief it has submitted on this appeal from the bankruptcy court's turnover order of November 13, 1981, Powell, Goldstein asserts, in addition to many of the same arguments it raised in bankruptcy court, first, that the bankruptcy court should have abstained, on principles of comity, from deciding the merits of the request for a turnover order granting the plaintiff possession of the same documents that the state court had previously permitted Powell, Goldstein to withhold from inspection; and, second, that the bankruptcy court committed reversible procedural errors when it determined ownership of matter that arguably belongs either to Powell, Goldstein or to persons who were not made parties to the present complaint, when it entered its order without conducting the requested evidentiary hearing, when it took judicial notice of the "general practice of the bar," when it made findings of fact that are unsupported by the record, and when it issued its findings of fact and conclusions of law in an order and a memorandum prepared by the plaintiff and signed by the bankruptcy court without providing an opportunity for Powell, Goldstein to object to the language in the order.  During oral argument before this court, Powell, Goldstein raised squarely for the first time on appeal an additional question, only alluded to in its brief, of whether the issue of ownership of the files is within the bankruptcy court's summary jurisdiction or is a matter that must be resolved in a plenary proceeding in either state court or a federal district court.

In response, the trustee argues (1) that the bankruptcy court has exclusive jurisdiction of a debtor's property and does not cede or transfer its jurisdiction when it directs a trustee or receiver to proceed with his claims in state court; (2) that since the state court's work product ruling was made in an order resolving a discovery dispute, that order disposes of only the question of whether the disputed materials are discoverable and not the issue of ownership of those materials; (3) that the bankruptcy court correctly concluded that Kaleidoscope owns those materials and that a client's possession of his own files cannot be thwarted by a work product privilege asserted by his attorney; (4) that the question of title to the legal files "is clearly a question of federal law, which must, of necessity, be decided by the bankruptcy court in the first instance"; (5) that Powell, Goldstein has admitted all of the facts necessary to resolution of the dispute as to possession of the legal files, and has thus obviated any need for an evidentiary hearing; (6) that since the question of ownership is one of law, not of fact, it was appropriate for the bankruptcy court to take juridical notice of the practice of local counsel in turning over clients' files upon the withdrawal of one attorney and the substitution of another; (7) that there was no impropriety involved in the bankruptcy court's use of the order and memorandum prepared by the plaintiff; and (8) that the bankruptcy court possessed summary jurisdiction because the files were Kaleidoscope's property held for its benefit by its agent and because Powell, Goldstein has no colorable claim of title to the files.

## III.  THE TRUSTEE'S MOTION TO RECONSIDER THIS COURT'S ORDER OF MAY 25, 1982

■  During the pendency of this appeal, both the Trustee and Powell, Goldstein have sought to supplement the record with various documents.  In an order dated May 25, 1982, this court permitted Powell, Goldstein to submit a certified copy of the December 1, 1981, order of the superior court in the first state court suit, which held that the work product doctrine permits Powell, Goldstein to refuse to produce some of the disputed documents in its files, and the

affidavit of Mr. Frank Love, Jr., a partner in the Powell, Goldstein firm. In the same order, this court permitted the Trustee to submit a certified copy of a stipulated order entered in the first state court suit on November 25, 1981, and a certified copy of a February 8, 1982, order in that same suit, in which the superior court identified the specific documents that it found, after its *in camera* inspection, to be work product.

This court refused, however, to allow the plaintiff to supplement the record with either the affidavit of Mr. Robert Bartlett or the documents attached to it, which were apparently among those examined by the superior court and found not to be work product. This court held that the Trustee's use of those documents in this appeal would violate the terms of the stipulated order, in which Theodore Munchak, MOA, and Donald Chapman who apparently acted as Mr. Munchak's agent during negotiations (referred to collectively in the stipulated order as the "MOA Defendants") agreed to waive any claims of privilege based on their relationship with Powell, Goldstein with regard to any communications related to the transactions alleged in the Trustee's complaint. In that stipulated order, the MOA defendants also authorized Powell Goldstein to produce documents under certain conditions, among them a prohibition of any use of confidential information for any purpose other than preparation for trial or trial of the first state court suit.

This court has reviewed the documents attached to the affidavit of Robert Bartlett and finds that only Exhibit A bears even an arguable relevance to the issue before this court. That document is a copy of a January 20, 1978, memorandum written by Wayne Shortridge and addressed to the Kaleidoscope file. The memorandum contains references to Powell, Goldstein's plans for receipt and use of the corporate files of Kaleidoscope that were then in the possession of the corporation's former counsel. Some of the statements tend to contradict, albeit only arguably, the assertions made in the Frank Love affidavit. Nothing indicates that this memorandum was prepared in anticipation of this or any other litigation and this court therefore rejects, for the purposes of ruling on this motion, Powell, Goldstein's assertion that the memorandum constitutes work product. This court also finds that the stipulated order does not prevent this court's consideration of the memorandum. The stipulated order merely establishes the conditions upon which the MOA Defendants waived any attorney-client privilege that they may have asserted with respect to the documents sought by the Trustee. On its face, the memorandum has no connection with Powell, Goldstein's representation of the MOA Defendants, and therefore the terms of the stipulated order can bear no relation to the Trustee's use of this document.

The remaining documents, Exhibits B through T, however, are clearly irrelevant to the question of ownership of Powell, Goldstein's Kaleidoscope files. This court will therefore modify its previous order to permit the Trustee to supplement the record with the affidavit of Roger Bartlett and with Exhibit A, but will deny permission to add to the record Exhibits B through T.

## IV. POWELL, GOLDSTEIN'S APPEAL FROM THE BANKRUPTCY COURT'S ORDER OF NOVEMBER 13, 1982

In reviewing the order of a bankruptcy court on appeal, a district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Perimeter Park Investment Associates,* 616 F.2d 150, 151 (5th Cir.1980). Decisions made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or abuse of discretion. *In re Ken Boatman, Inc.,* 359 F.Supp. 1062, 1063 (W.D.La.1973), *aff'd,* 504 F.2d 924 (5th Cir.1974). The bankruptcy court's conclusions of law, however, are freely reviewable, *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961), and a reviewing court therefore must independently determine the correctness of the bankruptcy court's legal conclusions.

A. *Questions Presented in Bankruptcy Court and in State Court*

To resolve the numerous arguments made by the parties on this appeal, this court must identify initially the questions presented to this court and determine their relation to the issues that have been presented to and decided by the superior court in the first state court suit.

Only two general questions were raised in bankruptcy court by the Trustee's turnover complaint: first, whether Powell, Goldstein has possession of property that belongs to Kaleidoscope, and second, if so, whether Powell, Goldstein has an interest other than ownership of the property that permits the law firm to retain possession? The later question has not been raised on this appeal. Although Powell, Goldstein asserted in the bankruptcy court that the law firm has an attorney's lien that permits it to retain possession of Kaleidoscope's property until the law firm's claims against the estate are satisfied, Powell, Goldstein has not questioned in this court the part of the bankruptcy court's turnover order that in effect preserves Powell, Goldstein's assertion of the lien on the materials in its possession pending latter determination of the lien's validity. As to the first question, the precise issue presented is whether the documents that were amassed in Powell, Goldstein's files as a result of its representation of Kaleidoscope are the property of Kaleidoscope, and therefore part of its bankruptcy estate, or the property of Powell, Goldstein, and therefore not properly the subject of the bankruptcy court's turnover order.

What appears to be a relatively straightforward question of "ownership" or "title," has become somewhat clouded by Powell, Goldstein's reliance upon cases that deal with the "work product" doctrine. Powell, Goldstein asserts that

> it should be clear, as a matter of law, that an attorney's legal files, as opposed to client documents which may be in an attorney's possession, are the property of the attorney, not the client. As a result neither the [Trustee] nor Kaleidoscope nor any other client of Powell, Goldstein

is entitled to possession of Powell, Goldstein's files relating to that client.

Brief of Appellant at 17 (emphasis omitted). Powell, Goldstein supports its assertion of ownership with the following argument: The work product doctrine, which permits a lawyer to withhold from discovery any documents that contain his mental impressions, analyses, and legal conclusions, belongs to the lawyer and not the client; to allow a client to own the lawyer's work product is inconsistent with the lawyer's right to keep that information confidential. Powell, Goldstein thus relies on the work product doctrine not as a grounds for retaining documents that Kaleidoscope owns, but as support for its assertion that as a matter of law the attorney, not the client, must be considered the owner of the files.

The Trustee maintains, and the bankruptcy court agreed, that a lawyer's mental impressions are precisely what a lawyer has to sell and what a client pays for and that therefore the client owns any documents that record those impressions. Responding to Powell, Goldstein's arguments, the Trustee asserts that the privilege to maintain the confidentiality of a lawyer's work product exists for the benefit of the client, and not of the lawyer, that to be considered work product a document must have been created in anticipation of litigation against someone other than the client, and that, in any event, the work product doctrine is a discovery doctrine that is irrelevant to the question of title. Powell, Goldstein is in effect, the Trustee contends, asking the court to recognize a "new privilege" that "creates a wall between an attorney and his client, beyond which a client cannot pass, and in the shadow of which an attorney can shield documents created during the course of that client's representation from the view of that client." Revised Brief of Appellee at 25.

■ In the first state court suit, Powell, Goldstein relied upon the work product doctrine in its defense against the Trustee's motion to compel. Although the record on appeal contains an incomplete account of the superior court's proceedings, it appears

that the dispute in that court was only a discovery dispute and that Powell, Goldstein relied upon the work product doctrine in that instance to support not a claim of ownership, but a claim of immunity from compelled disclosure. Identifying the questions resolved in its December 1, 1981, order, the superior court described the issues that involved Powell, Goldstein as

(d) whether the Powell, Goldstein, Frazer & Murphy law firm and Defendants Shortridge and Moeling should be required to produce documents in their possession which they contend constitute confidential communications between the law firm and former clients of the law firm, namely, Mr. Munchak and MOA Corporation, which Powell, Goldstein, Frazer & Murphy had been instructed by attorneys for their former clients to withhold from production on grounds of attorney/client privilege, [and]

(e) whether the law firm of Powell, Goldstein, Frazer & Murphy and Defendants Shortridge and Moeling should be required to produce internal memoranda and notes prepared by attorneys at Powell, Goldstein, Frazer & Murphy which they contend contain the mental impressions, legal theories and research notes of Powell, Goldstein's attorneys from their files regarding the transactions and events at issue in this litigation and which they further contend constitute attorney work product prepared in anticipation of possible litigation, with respect to which they contend no compelling need has been shown by the Plaintiff, and as to which they assert that mental impressions, legal theories and research notes of lawyers are protected from discovery by Section 26(c) of the Civil Practice Act.

Superior Court Order of December 1, 1981, at 2. Although the superior court's holding on the protection afforded by the work product doctrine under the Georgia procedural rules does support one of Powell, Goldstein's contentions to the extent that it clarifies the nature of the work product discovery doctrine applied under Georgia law, the superior court's order makes no mention of, and therefore cannot be presumed to have resolved, questions of ownership.

Even if the superior court's ruling is deemed clear state court precedent for the proposition that under Georgia law the work product privilege belongs to the lawyer and not to the client, it is doubtful that such a holding makes the work product doctrine a principle of property law merely because of the possibility of inconsistency between the outcome of the title dispute and the superior court's resolution of the question of whether particular documents are discoverable and cannot be presumed to call a court's attention to questions of title. Nor is there clear evidence in the record to suggest that the Trustee relied upon a right of ownership in seeking possession of these documents in the superior court. This court will not presume, therefore, that the superior court considered the possibility of inconsistent results that Powell, Goldstein relies upon here. Thus, the superior court's ruling can have no *res judicata* effect in this bankruptcy action.

### B. *Jurisdiction*

■ Powell, Goldstein challenges the bankruptcy court's jurisdiction of the Trustee's turnover complaint on two grounds. First, Powell, Goldstein asserts that "the Bankruptcy Court's [turnover] order directly infringes upon the jurisdiction which was ceded to the Superior Court by the Bankruptcy Court's order of June 19, 1979 directing the [Trustee] to prosecute his claims against Powell, Goldstein's former clients . . . in that forum." Brief of Appellant at 36. It is true, as Powell, Goldstein notes, that when a bankruptcy trustee resorts to state court for the prosecution of a claim, the state court has jurisdiction of everything within the scope of that claim, and that the trustee will be bound by the state court's adjudication. Some courts have held that a bankruptcy court has no discretion to decide questions that are identical to the issues presented in a state court action that was pending before the filing of the bankruptcy complaint. *E.g., In re Terrace Lawn Memorial Gardens,* 256 F.2d 398, 402 (9th Cir.1958).

■ This court does not agree, however, that the bankruptcy court has "ceded" or somehow transferred to the state courts all issues that the Trustee could conceivably bring to the bankruptcy court as a result of Powell, Goldstein's representation of Kaleidoscope. The bankruptcy court's June 19, 1979, order did not relinquish, transfer, or "cede" jurisdiction over the administration of the Kaleidoscope estate. Rather, the bankruptcy court referred to the state courts the Trustee's claim that the transfer of Kaleidoscope's assets to MOA violated, among other things, a recently enacted state statute. Powell, Goldstein has not demonstrated how its claim of ownership of the disputed materials can be deemed to be within the scope of the Trustee's claims in the first state court suit, which the record on appeal indicates has to date presented to the superior court only two questions: whether the transfer of Kaleidoscope's assets to MOA are invalid and whether under Georgia law the work product discovery doctrine protects any of the material in Powell, Goldstein's files from pretrial discovery. Neither of those issues need be resolved in order for the bankruptcy court to rule upon the Trustee's turnover complaint. Nor does it appear that resolution of the issues before the superior court in the first state court suit requires a determination of ownership of the files. Thus, the bankruptcy court's turnover order does not interfere with the state court proceedings that resulted from the bankruptcy court's order of June 19, 1979.

As its second ground for challenging the bankruptcy court's jurisdiction, Powell, Goldstein argues that its claim of title to the documents in the files deprives the bankruptcy court of summary jurisdiction and that the conflicting claims of ownership therefore must be adjudicated in a plenary proceeding.

■ In an action brought under the Bankruptcy Act of 1898, 11 U.S.C. § 1 *et seq.,* which was in effect both when the bankruptcy petition was filed in this action and when the Trustee filed his original complaint against Powell, Goldstein, a bankruptcy court possesses only limited jurisdiction.

A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated "in suits of the ordinary character, with the rights and remedies incident thereto." But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court.

*Cline v. Kaplan,* 323 U.S. 97, 98–99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944) (citations omitted). The Fifth Circuit has held that a party to a bankruptcy proceeding who asserts a substantial claim of title to the property at issue necessarily presents a substantial claim of legal right to maintain possession and therefore must be afforded an opportunity to have the dispute heard in a plenary proceeding. *In re Dinkins,* 610 F.2d 367, 370 (5th Cir.1980) (citing *American Mannex Corp. v. Huffstutler,* 329 F.2d 449, 451 (5th Cir.1964)).

In response to Powell, Goldstein's challenge to the bankruptcy court's summary jurisdiction, the Trustee argues the merits of the ownership question, apparently considering the rule stated in *In re Dinkins* to require that the party claiming a right to plenary proceedings demonstrate conclusively that it has title. However, it is well-established that to oust the bankruptcy court of summary jurisdiction Powell, Gold-

stein need show only that its claim is more than "merely colorable or frivolous." 610 F.2d at 370. Regardless of the merits of the law firm's assertions of title, its claims are at least substantial. The Trustee himself cites only one case, *In re Calestini,* 321 F.Supp. 1313 (N.D.Cal.1971), in support of his claim of ownership. In that case, the district court affirmed a bankruptcy court's order requiring an attorney to turn over to a bankruptcy trustee all of the attorney's legal files that related to a personal injury action which the attorney had initiated on behalf of his client prior to the client's bankruptcy. The facts of that case are distinguishable from the facts presented on this appeal in that the files at issue in *In re Calestini* pertained only to a particular cause of action that the district court held was the property of the client. Nevertheless, even if *In re Calestini* directly supports the Trustee's contentions, the conclusion of that one district court, which applied California law to determine the client's property right to the cause of action and looked to federal bankruptcy law only to determine whether documents were among the items considered "property," does not render Powell, Goldstein's contrary assertion frivolous or insubstantial.

The Trustee also relies upon the well-established rule, cited in *In re Calestini,* 321 F.Supp. at 1316, that a bankruptcy court has constructive possession of a debtor's property in the hands of its agent. *See, e.g., May v. Henderson,* 268 U.S. 111, 115, 45 S.Ct. 456, 458, 69 L.Ed. 870 (1925); *In re Naviera Azta, S.A.,* 500 F.2d 390, 391 (5th Cir.1974). In the present action, however, application of the rule of constructive possession by an agent to support summary jurisdiction merely begs the jurisdictional question. The bankruptcy court cannot support its jurisdiction to decide the question of title under this rule by deciding the merits of the dispute, that is, that the property in the agent's hands is in fact the debtor's property. The application of that rule in *In re Calestini,* to the extent it was necessary to support the bankruptcy court's jurisdiction in that case, is rejected by this court.

The Trustee also asserts that since there is no dispute as to the relevant facts, even if the bankruptcy court lacked summary jurisdiction, the appropriate remedy would be for this court to consider the merits of the ownership issue as a matter of law in the first instance rather than as an appellate court, pursuant to Rule 10–103(b), Fed. R.Bankr.P., which authorizes a district court to "at any time, for the convenience of the parties or other cause, withdraw a case in whole or in part from a referee and either act himself or assign the case or part thereof to another referee in the district." However, the remedy for a bankruptcy court's improper exercise of summary jurisdiction is to allow the aggrieved party an opportunity to raise its claims or defenses in the course of a plenary proceeding, in which all parties must be allowed to proceed as if the bankruptcy court had made no findings. Moreover, given Powell, Goldstein's continued assertions that some facts remain disputed and that the bankruptcy court erred in denying its request for an evidentiary hearing, this court cannot agree with the Trustee's assertion that all of the relevant facts are sufficiently beyond dispute to make plenary proceedings unnecessary.

■ For these reasons, this court concludes that the bankruptcy court lacked summary jurisdiction to determine the question of title to the documents in Powell, Goldstein's files. However, despite its lack of summary jurisdiction over the Trustee's claim of ownership of the files, the bankruptcy court nevertheless retains jurisdiction over the original complaint against Powell, Goldstein filed on August 29, 1979. Whatever objection Powell, Goldstein had to the summary jurisdiction over the claims raised by that complaint must be deemed waived by the law firm's request for and consent to the dismissal of its appeal of the bankruptcy court's March 3, 1980, order denying Powell, Goldstein's motion to dismiss. The bankruptcy court therefore had jurisdiction to enter the part of its November 13, 1981, order that preserved for later determination Powell, Goldstein's assertion of an attorney's lien on Kaleidoscope's proper-

ty other than the disputed documents in the files. Furthermore, once the question of ownership of the disputed documents is resolved, the bankruptcy court may still exercise summary jurisdiction over any claim by the Trustee to property that has been finally determined to belong to Kaleidoscope.

## C. Abstention

Having determined that Powell, Goldstein has a right to present in a plenary proceeding its claim of title to the documents in its files, this court must now determine the appropriate forum to conduct such a proceeding.

In support of its argument that principles of comity require this court to abstain from deciding the question of ownership, Powell, Goldstein relies upon its assertions that this bankruptcy action and the first state court suit involve "virtually identical" issues, an assertion this court has rejected in the context of Powell, Goldstein's *res judicata* argument. Cases holding that a district court should abstain from considering issues that are already pending before initiation of a bankruptcy action do not control here; it appears from the record that no state court is presently considering the conflicting claims of ownership advanced by Powell, Goldstein and the Trustee. Thus, the maintenance of two suits against Powell, Goldstein in the superior court does not, of itself, make abstention appropriate in this case. Nevertheless, this court finds it both appropriate and necessary to abstain, on other grounds, from deciding the question of title to the disputed materials.

■ The Supreme Court has held that federal district courts must abstain from deciding "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244–1245, 47 L.Ed.2d 483 (1976) (citing *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The abstention doctrine is not automatically invoked by the presence of a doubtful issue of state law. Rather, a district court's decision to abstain involves a discretionary exercise of its equity powers and therefore requires that a court ascertain on a case-by-case basis whether there exist the requisite special circumstances that mandate abstention. *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964).

The fundamental rule of abstention in bankruptcy actions was established in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), in which the Supreme Court held that a district court, sitting in that case as a bankruptcy court and exercising summary jurisdiction, should have abstained from deciding the question of whether conveyances of certain railroad right of way lands had granted an Illinois railroad a mere easement permitting use of only the surface or had transferred fee-simple ownership with the right to exploit the oil that had been discovered beneath those lands. The Court held that the debtor railroad's "possession of those lands under a claim of fee-simple ownership by the railroad and later by the trustee was an adequate basis for the district court's summary jurisdiction." *Id.* at 482, 60 S.Ct. at 630. The district court therefore had jurisdiction to protect the interests of all who claimed ownership and did not abuse its discretion in authorizing the trustee to extract and sell the oil and to impound the proceeds pending a final determination of title. However, although the court's summary jurisdiction extended to adjudication of that question of title, the Supreme Court concluded that the exercise of that jurisdiction was inappropriate in that case.

A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the

course of bankruptcy administration. And, under the circumstances of this case, we conclude that it is desirable to have the litigation proceed in the State courts of Illinois. An order to the trustee to proceed in the Illinois courts for a decision on the ownership of the fee to the right of way lands will be comparable to one in which the bankruptcy court, preserving the status quo the while, orders a trustee to determine in a plenary State court suit the legal right to property alleged by the trustee to have been fraudulently transferred by the bankrupt. Decision with which the federal court of bankruptcy is here faced calls for interpretation of instruments of conveyance in accordance with Illinois law. Neither statutes nor decisions of Illinois have been pointed to which are clearly applicable. And the difficulties of determining just what should be the decision under the law of that State are persuasively indicated by the different results reached by the two Circuit Courts of Appeal that have attempted the determination. Unless the matter is referred to the State courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the State which in such matters is supreme.

*Id.* at 483–84, 60 S.Ct. at 630–631 (citations omitted). The Court remanded the action to the district court with instructions to modify its order to provide for submission of the title question to the Illinois courts.

Federal courts that have been asked to follow the *Thompson* rule of abstention have made it clear that although bankruptcy courts may in the exercise of their discretion refer many issues to state courts, *see In re Jewel Terrace Corp.,* 3 B.R. 36, 38–39 (Bkrtcy.E.D.N.Y.1980), only in an exceptional case will an appeals court deem a failure to abstain an abuse of discretion. *In re Chicago, Milwaukee, St. Paul and Pacific R.R. Co.,* 654 F.2d 1218, 1223 (7th Cir.1981).

It is now a settled rule that bankruptcy abstention is required only if resolution of the state law question will involve the bankruptcy court in matters of substantial public import, *see, e.g., In re Kaleidoscope,* 3 B.R. 7, 9 n. 2 (Bkrtcy.N.D.Ga.1979) (order in this action denying Powell, Goldstein's motion to dismiss the Trustee's original complaint), and only if there exists no state court precedent that either answers the precise question presented or enables the bankruptcy court to predict with reasonable certainty the conclusion that the state courts will reach when ultimately presented with the question. *In re Boston and Maine Corp.,* 596 F.2d 2, 8 (1st Cir. 1979); *In re Chicago & North Western Ry. Co.,* 127 F.2d 1001, 1004 (7th Cir.1942).

Some courts have suggested as well that a federal court should not abstain from deciding difficult state law questions when there is available no procedure by which a party can present the question to the state court. *See, First National Bank of White River Junction v. Reed,* 306 F.2d 481, 488 (2d Cir.1962) (noting availability of declaratory judgment action). However, a bankruptcy court should decline to abstain for this reason only if absolutely certain that attempts to present the question to the state courts will be futile.

Applied to the facts of this action, the bankruptcy rule of abstention clearly requires that a plenary proceeding to determine ownership of the disputed files be brought in state rather than federal court. First, although a determination of whether a particular item or interest is "property" within the meaning of section 70 of the Bankruptcy Act presents a federal bankruptcy law question, *see, e.g., Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966); *In re Calestini,* 321 F.Supp. at 1316, to determine whether a particular party has any interest at all, a bankruptcy court would have to apply state property law. *See Thompson v. Magnolia Petroleum Co.,* 309 U.S. at 483–84, 60 S.Ct. at 630–631.

Second, resolution of the issue of ownership would undoubtedly involve this court in matters of great public import. The

abundant attention the parties have paid to the work product doctrine not only presents intriguing questions, but also demonstrates the substantial effect a decision of the issue will have upon the relations of attorneys and their clients. This dispute calls for a weighing of policy considerations that are best addressed by the state courts, which have primary responsibility for the regulation of the practice of law in Georgia. At stake is the protection of both a lawyer's right to think and practice freely and the client's right to demand an accounting of the actions of his agent. On the one hand, a lawyer who cannot record freely all of his ideas without fear of later examination by his client may be less likely to consider fully what both lawyer and client should do in particular situations and may therefore provide less-informed or ill-considered representation. Thus, the argument runs, unless the lawyer's recorded thoughts are protected, the lawyer will not provide effective legal services; therefore, to protect the client's interest in effective representation the law must uphold the confidentiality of the lawyer, even to the extent of denying the client access to written evidence of some of the thoughts he has arguably paid for. On the other hand, such a rule presents great potential for abuse, making it far too easy for a lawyer to hide not only his thoughts, but any breach of the fiduciary duties he owes to his client. And, the latter argument continues, the lawyer should not fear the disclosure of thoughts that are not evidence of a breach of duty. Thus, for a court to decide the merits of the title question, substantial state interests must be considered.

Third, the parties have cited no clear state court precedent upon which this court can base a reasonably well-informed guess as to the conclusion the Georgia courts will ultimately reach when they are someday faced with the ownership question. *In re Calestini,* a decision by a California district court, cannot be considered clear precedent likely to be accorded substantial weight by the Georgia courts. And the evaluation of Powell, Goldstein's argument that the ownership of an attorney's files is analogous to an accountant's title to certain property in

the latter's files would engage this court in interpreting and predicting unsettled Georgia law as to the property rights not only of lawyers, but of accountants as well.

Finally, it does not appear from the record that any rule of Georgia procedure precludes the Trustee from taking his claim of ownership to state court, in which there are now pending two suits between the Trustee and either Powell, Goldstein or two of its partners. For all of the above reasons, abstention under the rule of *Thompson* is required in this case.

Accordingly, the Trustee's motion for reconsideration is GRANTED IN PART and DENIED IN PART. The turnover order of the bankruptcy court of November 13, 1981, as modified by the bankruptcy court's supersedeas order of November 24, 1981, is REVERSED as set forth in this order. This action is REMANDED to the bankruptcy court with instructions to stay further proceedings on the Trustee's turnover complaint and to direct the Trustee to present in the courts of the state of Georgia the question of title to the documents created by Powell, Goldstein and placed in its files as a result of representation of Kaleidoscope.